# EXHIBIT 3

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, SS.

SUPERIOR COURT DEPARTMENT
OF THE TRIAL COURT

---

ACRONIS, INC. LTD. and
ACRONIS INC.,

           Plaintiffs,

v.

LUCID8, L.L.C.,

           Defendant.

Civil Action No. _____ 11-0263

```
FILED
IN THE OFFICE OF THE
CLERK OF COURTS
FOR THE COUNTY OF MIDDLESEX
      JAN 2 7 2011
                    CLERK
```

### VERIFIED COMPLAINT AND JURY DEMAND

### NATURE OF THE LAWSUIT

1.     This is an action for declaratory judgment that Plaintiffs Acronis, Inc. and Acronis

Inc. Ltd. have not misappropriated confidential information allegedly provided to them by

Defendant Lucid8, L.L.C., for unfair competition and trade practices in violation of

Massachusetts General Laws Ch. 93A, and for defamation.

### PARTIES AND JURISDICTION

2.     Plaintiff Acronis, Inc. Ltd. is a company organized and existing by virtue of the

laws of the British Territory of Bermuda with its principal U.S. administrative offices at 300

Trade Center, Woburn, Massachusetts 01801.

3.     Plaintiff Acronis, Inc. is a company organized and existing under the laws of the

State of Delaware with its principal place of business at 300 Trade Center, Woburn,

Massachusetts 01801. Acronis, Inc. is a wholly owned subsidiary of Acronis, Inc. Ltd. Acronis,

Inc. and Acronis, Inc. Ltd. are collectively referred to herein as "Acronis."

{M0244362.1 }

1

4.    Defendant Lucid8, LLC ("Lucid8") is a limited liability company organized and existing under the laws of the State of Washington with its principal place of business at 1417 116th Avenue NE, Suite 202, Bellevue, Washington  98004.

5.    Jurisdiction and venue are proper in this Court under Mass. G. L. Ch. 223A, § 3 and Ch. 223, §§ 1 and 8.

6.    This Court is authorized to grant declaratory judgment in this matter under Mass. G.L. Ch. 231A, § 1.  An actual case or controversy has arisen between the parties because Lucid8 has accused Acronis of misappropriating Lucid8's confidential information.

7.    This Court has personal jurisdiction over Lucid8, whose contacts with the Commonwealth of Massachusetts in connection with this matter include:  (a) contacting Acronis representatives in Massachusetts to discuss the sale or license of Lucid8's software to Acronis; (b) contacting a member of the Acronis board of directors in Boston and asking him to provide an introduction to Acronis' CEO to permit the parties to have "discussion at a higher level" concerning the sale or license of Lucid8's software; (c) making defamatory statements concerning Acronis to at least one person in Massachusetts in regard to the parties' discussions; and (d) entering into "Mutual Confidential Disclosure Agreement" dated as of March 29, 2010 (hereinafter, the "NDA") with Acronis, Inc. Ltd.  A true copy of the NDA is attached hereto as **Exhibit A**.  The NDA provides that it "will be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts."  (NDA at ¶ 7, Ex. A.)

## FACTS

8.    Acronis is a leading provider of backup and recovery software.  Since 2008, it has marketed a software product called Acronis Recovery for Microsoft Exchange ("ARX").

9.    ARX permits computer users to make backup files of emails and other data that

they create using Microsoft Exchange, a third-party software product. Users of ARX can view or recover specific emails from a backup file without having to restore the entire backup file. This capability to view or recover specific items is referred to as "granular recovery." Acronis developed granular recovery capabilities in 2008 using a trial-and-error approach to ascertain how Microsoft Exchange stores items such as email. Acronis implemented these capabilities in its ARX product before contacting Lucid8.

     10.    Lucid8 is a provider of disaster recovery software known as DigiScope. DigiScope is not directly competitive with Acronis' ARX product but includes a granular recovery capability.

     11.    In 2010, Acronis decided to create an updated version of its ARX product, which would include, among other things, an improved granular recovery capability. Although Acronis had previously developed granular recovery capability using a trial-and-error approach, it decided in March of 2010 that it might be faster and less expensive to acquire the improved granular recovery capability from another company that had already developed the capability. Acronis identified Lucid8 and two other companies as potential providers of improved granular recovery capability.

     12.    Acronis expressed its interest to Lucid8 on or about March 23, 2010 and the parties entered in into the NDA (attached as Exhibit A) on or about March 30, 2010. Lucid8 provided Acronis with an evaluation copy of its DigiScope software on or about April 1, 2010.

     13.    During the first half of April 2010, Acronis reviewed the evaluation copy of DigiScope. During this review, an Acronis staff person operated the DigiScope program as an end user to confirm that DigiScope included granular recovery capabilities. The evaluation did not involve reverse engineering of the DigiScope program and did not reveal to Acronis how

Lucid8 created granular recovery capabilities.  On April 7, 2010, an Acronis manager in Moscow ordered Acronis personnel to also conduct an internal assessment of Acronis' existing granular recovery capability.

14.     Acronis and Lucid8 met in person on April 15, 2010 for a one hour presentation. This meeting was the parties' first and only in-person meeting.  During this meeting, Lucid8 provided a general explanation of the functionality of the DigiScope product.  Lucid8 raised no objections at that time to the possibility that Acronis would internally develop improved granular recovery capabilities.

15.     On or about April 28, 2010, Acronis completed its internal assessment of its existing granular recovery capability and was prepared to continue its evaluation of DigiScope. At that time, however, Acronis was unable to operate the DigiScope program with the license key that had been provided by Lucid8 on or about April 1, 2010.  Acronis contacted Lucid8 on April 28, 2010 for assistance, but Luicid8 refused to provide a new license key.  Acronis thus never fully completed its evaluation of DigiScope and no information acquired by Acronis during the evaluation of DigiScope was ever used by Acronis to create an updated version of the ARX product.

16.     During a telephone call between the parties on or around April 28, 2010, Lucid8 expressed its suspicion that Acronis had used information provided to it during the April 15, 2010 in-person meeting to develop a competitive granular recovery capability.

17.     On May 5, 2010, Lucid8's counsel sent to Acronis the letter attached as **Exhibit B**. In this letter, Lucid8 abruptly terminated business discussions with Acronis (Ex. B, p. 2).  It alleged that Acronis lied to Lucid8 about its intention to acquire granular restore technology rather than develop it internally (Ex. B, p. 1).  It also alleged that Acronis "has been and intends

to continue to misappropriate Lucid8's Confidential Information for its own use, in clear

violation of the NDA and applicable law." (Ex. B. at p. 2.) Lucid8 demanded that Acronis

return or destroy all confidential information received from Lucid8. Lucid8 also made various

demands and stated that "litigation regarding these matters is inevitable" if these demands were

not met (*Id*.).

18.     Lucid8's allegations of wrongdoing are false. Acronis made no

misrepresentations to Lucid8. Acronis never used information provided by Lucid8 to internally

develop an improved granular recovery capability or even to decide to embark upon an internal

development of an improved granular restore capability. Acronis was still considering licensing

technology from Lucid8 when it received Lucid8's bombshell letter of May 5, 2010. All

materials provided to Acronis by Lucid8 (including the evaluation copy of DigiScope) were

promptly returned and/or destroyed as demanded by Lucid8 in its letter of May 5, 2010.

19.     Since May of 2010, Acronis has internally developed improved granular recovery

capabilities using the pre-existing trial-and-error technique that Acronis employed in 2008 when

it created the first version of the ARX product. Acronis' techniques were not derived from the

information provided to Acronis by Lucid8 during the parties' April 15, 2010 meeting or

Acronis' inspection of the evaluation copy of DigiScope.

20.     Since receiving Lucid8's letter of May 5, 2010, Acronis has attempted to address

Lucid8's concerns and bring this matter to closure. On June 4, 2010, Acronis requested that

Lucid8 specifically identify the information that was allegedly misappropriated to permit

Acronis' counsel to conduct an investigation of Lucid8's claims. Lucid 8 refused to do so.

Jason Donahue, CEO of Acronis, then conferred with Troy Werelius, CEO of Lucid8, by

telephone on several subsequent occasions, including August 12, 2010, even permitting Mr.

Werelius to directly question Acronis personnel who he alleged lied to him in April of 2010.
During these conversations, Mr. Werelius continued to insist (incorrectly) that Acronis had
misappropriated Lucid8's alleged confidential information.

21.     Acronis plans to launch its updated ARX product in 2011. Based on the threats
and allegations made by Lucid8, Acronis is in reasonable apprehension that it will be sued by
Lucid8 if and when the updated ARX product is released.

22.     On May 28, 2010, Mr. Werelius, acting on behalf of Lucid8, sent an email on
May 28, 2010 to Scott Maxwell in Boston, Massachusetts. A copy of this email is attached
hereto as **Exhibit C**. Mr. Maxwell is a principal of the venture capital firm OpenView Venture
Partners. He sits on the board of directors of Acronis as the designee of third-party preferred
shareholders. The email reads in pertinent part, "I thought that you should know that the actions
of the folks at Acronis were not honest..." (Ex. C).

23.     It is critical to Acronis that it maintains a position of trust and respect with the
investment community, of which Mr. Maxwell is an esteemed member. Mr. Werelius told Mr.
Maxwell that Acronis was dishonest. This was a false and defamatory statement.

## CAUSES OF ACTION

## COUNT I – DECLARATORY JUDGMENT

24.    Acronis hereby incorporates by reference the allegations set forth in the
paragraphs 1-23 above.

25.    Lucid8 has claimed that Acronis has misappropriated and intends to continue to
misappropriate Lucid8's confidential information in violation of the NDA and applicable law,
and has threatened to bring a lawsuit on this basis.

26.     There exists an actual, present and justiciable controversy between Acronis and Lucid8 as to whether Acronis has misappropriated confidential information of Lucid8 in violation of the NDA and applicable law.

27.     Acronis seeks declaratory judgment from this court that the information provided to it by Lucid8 was not confidential information protected under the NDA or applicable law and that in any case Acronis has not misappropriated or otherwise used this information in violation of the NDA or applicable law.

### COUNT II – UNFAIR COMPETITION AND TRADE PRACTICES IN VIOLATION OF MASS G. L. CH. 93A, §§ 2, 11

28.     Acronis hereby incorporates by reference the allegations set forth in the paragraphs 1-27 above.

29.     Defendant is engaged in business or commerce within the meaning of Mass. G. L. Ch. 93A.

30.     As described above, Defendant knowingly disseminated false information to third parties about Acronis and how it does business.  Specifically, Defendant falsely told third parties that "the actions of the folks at Acronis were not honest...."

31.     The actions of Defendant were and continue to be knowing and willful violations and constitute unfair competition and unfair or deceptive trade practice.

32.     The unfair competition and unfair or deceptive trade practice occurred primarily and substantially in Massachusetts.  Defendant's false statement was made to a principal of Open View Venture Partners, a venture capital firm in Boston, Massachusetts.

33.     The conduct of Defendant has caused and is causing Acronis incalculable, irreparable harm and substantial damages.  Without injunctive relief, these actions will cause further irreparable harm.

{M0244362.1}

7

34.    By reason of the foregoing acts, among others, Defendant has engaged in unfair and deceptive trade practices, in violation of Mass. G. L. Ch. 93A, § 11. Each of Defendant's unfair and deceptive trade practices was, moreover, at all times willful and knowing.

35.    By reason of the foregoing acts, among others, Defendant Lucid8 is liable to Acronis for any economic damage proximately caused by Defendant's unfair and deceptive trade practices, in addition to treble damages and attorneys' fees for its willful violations of Mass. G. L. Ch. 93A, § 11.

## COUNT III – DEFAMATION

36.    Acronis hereby incorporates by reference the allegations set forth in the paragraphs 1-35 above.

37.    Lucid8 has made false and defamatory statements concerning Acronis, including accusations that Acronis was dishonest.

38.    Lucid8 has made an unprivileged publication of the false defamatory statements to at least one other person, namely Scott Maxwell.

39.    Lucid8's statements to Scott Maxwell were defamatory *per se*.

40.    Lucid8 published the false and defamatory statements with the knowledge that the statements were false, or with reckless disregard as to the falsity of the statements.

41.    The reputation of Acronis has been damaged and will continue to be damaged by Lucid8's statements.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs prays that this Court enter Judgment:

A.      Enjoining Lucid8 from engaging in unfair competition and trade practices, including but not limited to knowingly disseminating false information to third parties about Acronis and how it does business;

B.      Enjoining Lucid8 from publishing further defamatory statements about Acronis;

C.      Declaring that no information disclosed by Lucid8 to Acronis constitutes a trade secret or is otherwise confidential information of Lucid8 under the NDA or at law;

D.      Declaring that Acronis has not violated the NDA or otherwise misappropriated any trade secret or other confidential information of Lucid8 and that distribution, sale and use of Acronis' proposed updated ARX product (including its granular recovery capabilities) by any person will not misappropriate or otherwise infringe or breach any intellectual property or contractual right of Lucid8;

E.      Awarding to Acronis money damages sufficient to compensate Acronis for the defamatory statements made by Lucid8;

F.      Awarding to Acronis reimbursement for attorney's fees and costs, to the extent permitted under the law;

G.      Awarding to Acronis punitive damages and other enhanced damages as permitted by law based on Lucid8's defamatory statements about Acronis; and

H.      Awarding to Acronis such additional relief as the Court deems just and proper.

## JURY DEMAND

Acronis demands a jury trial on all triable issues.

Respectfully submitted,

ACRONIS, INC. LTD. and ACRONIS INC.,

By their attorneys,

Howard G. Zaharoff, BBO # 538580
Gregory M. Krakau (pro hac vice app. to be filed)
MORSE, BARNES-BROWN &
PENDLETON, P.C.
Reservoir Place
1601 Trapelo Road, Suite 205
Waltham, Massachusetts  02451
(781) 622-5930


OF COUNSEL

Andrew Basile, Jr. (P68543)
Christopher G. Darrow (P67196)
YOUNG & BASILE
3001 West Big Beaver Road, Suite 624
Troy, MI 48084
(248) 649-3333

Dated:  January 27, 2011

## VERIFICATION

I, Craig Newfield, Vice President and General Counsel of Acronis, Inc., declare that I have read this Complaint and now its contents. The contents are true to my knowledge except as to those matters that are alleged on information and belief; as to those matters, I believe them to be true.

I declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed on this 26th day of January, 2011 in Middlesex County, Massachusetts.

_____
Craig Newfield, Vice President and General
Counsel
Acronis, Inc.

# EXHIBIT A



## MUTUAL CONFIDENTIAL DISCLOSURE AGREEMENT

This Mutual Confidential Disclosure Agreement ("Agreement") is dated as of March 29th, 2010 (the "Effective Date") between Acronis Inc., Ltd, a Bermuda company, on its behalf and on behalf of its affiliates and direct and indirect subsidiaries (collectively, "Acronis") and the undersigned ("Company").

1. **Term of Exchange of Confidential Information and Surviving Obligations.** Acronis and Company agree that this Agreement will apply for a period of 5 year(s) from the Effective Date, (unless extended by mutual written agreement) when one of the parties ("Disclosing Party") discloses Confidential Information (as defined below) to the other party ("Recipient"). The obligations set forth herein as to each disclosure of Confidential Information will survive the termination or expiration of this Agreement.

2. **Confidential Information.** "Confidential Information" means certain commercially valuable, proprietary and confidential information with respect to the Disclosing Party's business, including without limitation, information that may relate to the Disclosing Party's products whether in distribution or under development, trade secrets, computer source code and object code, software and other product designs and specifications, methodologies, financial information and projections, data, developments, ideas, improvements, product and marketing plans, customer and vendor lists, and other oral, visual or written information, that the Disclosing Party designates as confidential or proprietary at the time of disclosure or that, under the circumstances surrounding disclosure, or by the nature of the information, would reasonably be understood by the Recipient to be confidential or proprietary, including without limitation any of the foregoing that is Confidential Information of the Disclosing Party's customers, vendors, partners, licensors or other third party with respect to which the Disclosing Party has an obligation of confidentiality. Confidential Information will not include information that (i) is disclosed in a printed or web publication or available to the public, is otherwise in the public domain at the time of disclosure, or becomes publicly known through no wrongful act or omission on the part of the Recipient, or (ii) is obtained by the Recipient lawfully from a third party who is not under an obligation of secrecy to Disclosing Party and is not under any similar restrictions as to use. If any Confidential Information is required to be disclosed by a judicial or governmental order, the Recipient will promptly notify the Disclosing Party and take reasonable steps to assist in contesting such order or in protecting the Disclosing Party's rights prior to disclosure.

3. **Purpose.** Each Disclosing Party may in its discretion disclose Confidential Information to enable the Recipient to evaluate the desirability of establishing a business relationship with the Disclosing Party or for any other purpose specified on Schedule A, which is attached and hereby incorporated herein (collectively, the "Purpose(s)").

4. **Nondisclosure and Nonuse.** Recipient agrees: (i) to hold the Confidential Information in confidence using reasonable security measures, (ii) not to disclose the Confidential Information to any person outside its organization, (iii) not to reverse engineer, decompile, disassemble or otherwise attempt to derive software source code, (iv) not to remove any proprietary rights legend from, and upon Disclosing Party's reasonable request to add such legend to, materials disclosing or embodying Confidential Information, and (v) to use the Confidential Information only in connection with the Purposes. Recipient further agrees that it will disclose the Confidential Information received by Recipient under this Agreement only to persons within its organization with a need to know such Confidential Information in the course of the performance of their duties, and who are bound by confidentiality obligations at least as restrictive as those set forth herein. Neither party makes any warranties regarding any Confidential Information disclosed under this Agreement, which is provided "as is" only, and neither party.

**Acronis**

have any responsibility for any expenses, losses or actions incurred or undertaken as a result of the receipt or reliance upon such Confidential Information.

5.     Ownership and Return.   All Confidential Information remains the property of Disclosing Party including all patent, copyright, trade secret, trademark and other intellectual property rights therein. No license or conveyance of any such rights to Recipient is granted or implied under this Agreement. At any time on ten (10) days prior written notice from Disclosing Party, Recipient agrees to return all documents and other tangible manifestations of Confidential Information received pursuant to this Agreement or created by the Recipient and embodying any part of the Confidential Information received hereunder orally, visually or in writing (and all copies and reproductions thereof). It is mutually agreed that Recipient and Disclosing Party will have no obligation to enter into any further agreement and that any decision to enter into or continue a business relationship is within each party's sole discretion.

6.     Injunctive Relief.   Recipient hereby acknowledges that unauthorized disclosure or use of Confidential Information would cause irreparable harm and significant injury to Disclosing Party which may be difficult to ascertain.  Accordingly, Recipient agrees that Disclosing Party will have the right to seek and obtain immediate injunctive relief from breaches of this Agreement, without obligation to post bond, in addition to any other rights or remedies it may have.

7.     Miscellaneous.   This Agreement will be binding upon and inure to the benefit of the parties hereto and their respective heirs, successors and assignees.  This Agreement will be construed and interpreted in accordance with the laws of the Commonwealth of Massachusetts.   Recipient acknowledges that it is subject to United States laws and regulations controlling the export of technical data, computer software, and other commodities and agrees not to export or allow the export or re-export of such data, software or other commodities in violation of such laws and regulations.  The headings used in this Agreement are for ease of reference only and will not be used to interpret any aspect of this Agreement.  This Agreement is executed by a sealed instrument as of the Effective Date.

ACRONIS INC./ITD                         COMPANY

By: _____                    By: _____

Name: _____                    Name: Tony Werelius

Title: VP, Bus. Dev.                      Title: President

Address: 300 Tradecenter                  Address: 1417 116th Avenue NE, Suite 202
Woburn, MA 01801                          Bellevue, WA 98004

[INCONFIDENTIAL]

# EXHIBIT B



LASHER
HOLZAPFEL
SPERRY &
EBBERSON
PLLC

ATTORNEYS AT LAW ≠ 601 UNION STREET, SUITE 2800
SEATTLE WA 98101-4000 / TELEPHONE 206.624.1230 / FAX 206 340-2563
WWW.LASHER.COM
EMAIL: MESSMER@LASHER.COM
DIRECT LINE: 206-654-2440

May 5, 2010

<u>*via email attachment*</u>

Jason Donahue, CEO
Alain Gentilhomme, VP of R&D
Ismail Azeri, VP of Bus. Devel.
Acronis, Inc.
300 TradeCenter, Suite 6700, Blm St.
Woburn, MA 01801

Re:    Lucid8, LLC - Misappropriation of Confidential Information

Gentlemen:

We represent Lucid8, LLC of Bellevue, Washington. Our client develops and markets Exchange Server data protection, discovery and recovery software, including DigiScope®. On March 23, 2010, our client was contacted by representatives of your company, who explained that they were interested in licensing the DigiScope® engine on an OEM basis, in order to add granular recovery and other capabilities to Acronis' backup and recovery software. They requested a copy of the latest version of the product (3.0, which was still in QA and not yet released) for evaluation purposes.

To facilitate discussions between our client and Acronis, a Mutual Confidential Disclosure Agreement (the "NDA") was submitted to Lucid8, modified and signed by the parties on March 29 and 30, 2010. A copy is enclosed for your reference. In order to induce Lucid8 to enter into the NDA, Mr. Azeri specifically represented to Lucid8 President Troy Werelius that Acronis did not have the technology provided by DigiScope®, that such capabilities were critical to Acronis' needs, and that Acronis intended to obtain those capabilities by license or purchase rather than developing them internally. In reliance upon those assurances and the terms of the NDA, our client on March 30 and April 1 provided Acronis with a copy of and licensing for the latest build of DigiScope® 3.0.

After approximately two weeks of testing the product, Mr. Azeri contacted Mr. Werelius and requested that Lucid8 meet in person with Mr. Gentilhomme and Audrey Moruga of Acronis. He again assured Mr. Werelius that Acronis was intending to license or purchase the solution provided by DigiScope®, not develop it internally. The meeting was held at Lucid8's offices on April 15, and included Lucid8 President Troy Werelius and its Chief Technology Officer Todd Werelius. Again in reliance upon Acronis' assurances and the terms of the NDA, Lucid8's representatives spoke freely at the meeting with Gentilhomme and Moruga, providing details regarding the design of the DigiScope® product, problems encountered, solutions reached, etc. They also disclosed confidential information regarding Lucid8's yet-to-be-released product "Exchange Protection Manager," including features, timing, pricing etc.

LASHER
HOLZAPFEL
SPERRY &
EBBERSON

Acronis, Inc.
May 5, 2010
Page 2

Near the end of the April 15 meeting, after all of the above disclosures had been made by Lucid8, Gentilhomme and Moruga revealed that Acronis actually did have under development a portion of the same technology offered by DigiScope®, but represented that such development still faced a number of significant issues. If this had been disclosed at the outset, Lucid8 would have never entered into the NDA or disclosed confidential information regarding its products.

On April 29, Troy Werelius received a follow up call from Mr. Azeri, who requested a renewed license key for the DigiScope® 3.0 software since the one used to that point had apparently ceased to function. In the course of the conversation, Mr. Azeri represented that although Acronis was still interested in the DigiScope® product, about a week and a half earlier the company had decided to start a "Tiger task team" to see if Acronis could develop the product "on its own." Assuming that Acronis ever stopped development of its own solution, it does not take a Ph.D. to calculate that this decision was made shortly after the April 15 meeting, with the benefit of all the disclosures made at that meeting as well as Acronis' thorough evaluation of the latest build of DigiScope® 3.0. And there is no other logical conclusion but that Acronis has been and intends to continue to misappropriate Lucid8's Confidential Information for its own use, in clear violation of the NDA and applicable law.

Under the circumstances, Lucid8 has no further interest in establishing a business relationship with Acronis, and the "Purposes" for disclosures under the NDA no longer exist. You are accordingly hereby notified that any further use of Confidential Information obtained by Acronis from Lucid8 is expressly prohibited by the terms of the NDA, including but not limited to Section 4 thereof.

On behalf of our client and pursuant to section 5 of the NDA, we hereby demand that you "return all documents and other tangible manifestations of Confidential Information received pursuant to [the NDA] or created by [Acronis] and embodying any part of the Confidential Information received [thereunder], orally, visually or in writing (and all copies and reproductions thereof)." We also demand that you provide a sworn certification on behalf of Acronis that it is in full compliance with all of its obligations under the NDA; that it has satisfied the foregoing return requirements; and that it has securely deleted and destroyed all copies of DigiScope® software and other electronic Confidential Information obtained from Lucid8, including all electronic data and information created using Lucid8's Confidential Information.

If we do not receive the above-referenced sworn certification by the close of business on Wednesday, May 12, 2010, litigation regarding these matters is inevitable. We trust that such legal action will not be necessary in order to enforce Lucid8's rights, and await your response.

Very truly yours,

Dean A. Messmer

Dean A. Messmer

cc:    Troy Werelius

# EXHIBIT C

From: Scott Maxwell [mailto:smaxwell@openviewpartners.com]
Sent: Friday, May 28, 2010 5:12 PM
To: Troy Werellus
Subject: Re: DigiScope Follow up

Troy, what happened?
S.


Scott Maxwell
OpenView Venture Partners
332 Congress St 3rd Floor | Boston MA 02210 | USA
Direct 617-478-7510
Cell: 917-842-2300
Fax 617-478-7601
E-mail: smaxwell@openviewpartners.com
Twitter: @ScottsNews
Visit our website: https://www.openviewpartners.com
Visit my blog: http://blog.openviewpartners.com/blog/now-what
LinkedIn: http://www.linkedin.com/in/scottmaxwell
Facebook: http://www.facebook.com/BostonScottMaxwell


On 5/28/10 8:08 PM, "Troy Werellus" <troy_werellus@lucid8.com> wrote:
Scott, I wanted to let you know that while I greatly appreciate the introduction to the Acronis crew, and that it started off very promising, the end result was less than desired. I certainly don't blame you for this, however since I have know you to be a straight forward and honest individual I thought that you should know that the actions of the folks at Acronis were not honest and forthright which was/is of great concern to us and therefore we handed the issue over to our legal team.

Anyway I do appreciate the referral, just thought you should know since you are involved with them.

Sincerely

Troy C. Werellus
Lucid8, LLC
troy_werellus@lucid8.com
425.456.8499
Monday-Friday 8AM to 6PM PST

Solutions
Inspiring
Confidence <http://www.lucid8.com/>