**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

_____
                                        )
ACRONIS, INC., LTD. and ACRONIS, INC.,  )
                                        )
    Plaintiffs,                         )
                                        )
    v.                                  )        **Civil Action No. 11-10772-DJC**
                                        )
LUCID8, LLC,                            )
                                        )
    Defendant.                          )
_____)

## MEMORANDUM AND ORDER

**CASPER, J.**                                      October 26, 2011

### I.    Introduction

Plaintiff Acronis, Inc., Ltd. and Acronis, Inc. (collectively, "Acronis") brought this action

against Defendant Lucid8, LLC ("Lucid8") alleging defamation and violation of Mass. Gen. L. c.

93A and seeking a declaratory judgment that Acronis did not misappropriate purported confidential

information allegedly provided by Lucid8 in connection with the development of Acronis' new

software product. Lucid8 now moves to dismiss the complaint for lack of personal jurisdiction

under Federal Rule of Civil Procedure ("Rule") 12(b)(2) and for lack of subject matter jurisdiction

under Rule 12(b)(1) claiming that no case or controversy exists. For the reasons set forth below,

Lucid8's motion to dismiss is DENIED.

### II.   Factual Background

Lucid8 is a provider of disaster recovery software called DigiScope. (Compl. ¶ 10).[1] Its

_____

[1]For the purposes of this Memorandum and Order, the parties' filings shall be abbreviated
as follows: Acronis' complaint ("Compl."); Lucid8's memorandum of law in support of its

headquarters are located in Bellevue, Washington.  (Compl. ¶ 4).   Acronis[2] is a provider of backup and recovery software.  (Compl. ¶ 8).  Its headquarters are located in Woburn, Massachusetts. (Compl. ¶ 3). Since 2008, Acronis has marketed a software product known as "Acronis Recovery for Microsoft Exchange" ("ARX").  (Compl. ¶ 8).  ARX permits computer users to create backup files of emails and other data using Microsoft Exchange, a third-party software product.  (Compl. ¶ 9).  ARX users can recover a single email among many that may be included in the backup file without having to restore the entire backup file. (Compl. ¶ 9).  This capability is known as "granular recovery."  (Compl. ¶ 9).  Since 2009, ARX included granular recovery capability which Acronis developed internally prior to any interaction with Lucid8.  (Compl. ¶ 9; Ex. 1, Declaration of Jason Donahue, Acronis CEO ("Donahue Decl.") ¶ 3).

In March 2010, Acronis decided to create an updated version of its ARX product with expanded granular recovery capability.  (Compl. ¶ 11).  To this end, Acronis began considering licensing certain granular recovery technology from third parties, including Lucid8.  (Compl. ¶ 11; Donahue Decl. ¶ 4).

On March 23, 2010, Lucid8 employee Derek Dawson emailed Acronis employee Kirill Bobrovskikh to inquire about the latter's recent download of Lucid8's DigiScope product from Lucid8's website.  (Pl. Opp., Ex. 2 (email exchange)).  Acronis employee Andrey Moruga responded to Dawson's email, stating that Acronis was looking for third-party software to provide granular recovery and that buying a third-party engine was one of the possibilities the company was

---

motion to dismiss ("Def. Memo"); Acronis' opposition to Lucid8's motion to dismiss ("Pl. Opp."); Lucid8's amended reply to Acronis' opposition to Lucid8's motion to dismiss ("Def. Am. Reply"); and the transcript of motion hearing held on August 31, 2011 ("Tr.").

[2]Acronis, Inc. is a wholly owned subsidiary of Acronis, Inc. Ltd.  (Compl. ¶ 3).

considering.  (Pl. Opp., Ex. 2).  Moruga added Ismail Azeri, Acronis' Vice President of Business Development, to the email communications.  (Pl. Opp., Ex. 2).  Azeri is a resident of Massachusetts and works at Acronis' Massachusetts headquarters.

The same day, Troy Werelius, Lucid8's CEO, e-mailed Scott Maxwell, a prominent investor, member of Acronis' board of directors and Massachusetts resident, to ask Maxwell to introduce him to the Acronis CEO, Jason Donahue, so Werelius and Donahue could have a discussion at a "higher level" about a potential relationship between Acronis and Lucid8.  (Donahue Decl. ¶ 6, Ex. A). Maxwell responded by introducing Werelius and Donahue via email.  (Donahue Decl. ¶ 6, Ex. A). On the following day, March 24, 2010, as a result of Maxwell's introduction, Werelius and Donahue spoke by phone and discussed the possibility of Acronis licensing software from Lucid8 to provide expanded granular recovery capability in the updated version of ARX.  (Donahue Decl. ¶ 6, Ex. A). Werelius also exchanged emails with Azeri and Moruga of Acronis on March 24, 2010 indicating interest in establishing a business relationship.  (Pl. Opp., Ex. 2).  In one of those exchanges, Moruga told Werelius that Acronis needed to understand certain details about Lucid8's product to determine whether it would choose a partner or develop an "in-house solution."  (Pl. Opp., Ex. 2).

On March 25, 2010, Azeri emailed Werelius and indicated that he had spoken to Donahue and that Acronis was interested in exploring a business relationship.   (Pl. Opp., Ex. 3).  Azeri's email attached a proposed non-disclosure agreement ("NDA").   (Pl. Opp., Ex. 3).  Werelius responded by requesting changes to the NDA, including the removal of a Massachusetts forum selection clause.  (Pl. Opp., Ex. 3; Def. Am. Reply, Supplemental Affidavit of Troy Werelius ¶ 3). Azeri coordinated review of the changes and emailed Werelius an updated copy of the NDA on March 29, 2010.   (Pl. Opp., Ex. 4).  Werelius then returned an executed copy of the NDA.  (Pl.

Opp., Ex. 4).

On March 30, 2010, Azeri sent Werelius the NDA executed by him on behalf of Acronis. (Pl. Opp., Ex. 4). The final and executed NDA included Acronis' Massachusetts address and a Massachusetts choice of law provision, but not a Massachusetts forum selection clause. (Compl., Ex. A (NDA); Pl. Opp. at 5). Azeri and Werelius exchanged a series of emails arranging for the upload of software to Acronis and a conference call to discuss a timeline and objectives. (Pl. Opp., Ex. 4).

Soon thereafter, on April 7, 2010, Azeri and Werelius exchanged emails regarding the timeline for Acronis' evaluation of the software. (Pl. Opp., Ex. 5). A week later, on April 14, 2010, Azeri and Werelius corresponded via email and participated in a conference call to discuss the parties' business relationship and to coordinate a meeting at Lucid8's offices in Washington state between Acronis and Lucid8 representatives. (Pl. Opp., Ex. 6; Def. Memo at 3). The next day, Acronis and Lucid8 met in person for a one-hour presentation. (Compl. ¶ 14). This was the parties' first and only in-person meeting. (Compl. ¶ 14). During this meeting, Lucid8 explained the functionality of the DigiScope product. (Compl. ¶ 14). Lucid8 raised no objections to the possibility that Acronis would internally develop improved granular recovery capabilities. (Compl. ¶ 14).

On April 28, 2010, Azeri and Werelius exchanged emails and scheduled a phone call for the following day to "determine [the] best course of action" to address a problem with the evaluation software. (Pl. Opp., Ex. 7). Acronis had completed its internal assessment of its existing granular recovery capability and was prepared to continue its evaluation of DigiScope, but Acronis was unable to operate the DigiScope program with the license key Lucid8 had provided. (Compl. ¶ 15).

As a result, Acronis was not able to complete its evaluation of DigiScope. (Compl. ¶ 15). During a telephone call between the parties on April 28, 2010, Lucid8 expressed its suspicion that Acronis had used its information from the April 15, 2010 in-person meeting to develop a competitive granular recovery capability. (Compl. ¶ 16).

One week later, on May 5, 2010, Dean Messmer, attorney for Lucid8, emailed a letter to Donahue and Azeri, addressed to Acronis' Massachusetts address, asserting that Acronis had violated the NDA and had misappropriated Lucid8's purported confidential information and threatening litigation. (Donahue Decl. ¶ 7; Compl. ¶ 17, Ex. B (Messmer letter)). The letter stated Lucid8's view that Acronis "has been and intends to continue to misappropriate Lucid8's Confidential Information for its own use, in clear violation of the NDA and applicable law." (Donahue Decl. ¶ 7; Compl. ¶17, Ex. B). The letter further indicated that "litigation regarding these matters is inevitable" unless Acronis provided certain sworn certifications in response to Lucid8's allegations. (Donahue Decl. ¶ 7; Compl. ¶ 17, Ex. B). Acronis responded to Messmer's letter on May 11, 2010, denying the allegations of wrongdoing. (Donahue Decl. ¶ 8, Ex. B).

Later that month, on May 28, 2010, Werelius emailed Maxwell, the Massachusetts-based investor and Acronis board member, stating that "the actions of the folks at Acronis were not honest and forthright which was/is of great concern to us and therefore we handed the issue over to our legal team." (Donahue Decl. ¶ 9, Ex. A). Upon learning of this email, Donahue became "concerned . . . that Mr. Werelius had stated to Mr. Maxwell, an influential member of both our Board of Directors and of the institutional investing community, that Acronis was not honest" and that since "OpenView Venture Partners [Maxwell's company] is a prominent Boston-based venture capital firm . . . such an allegation had the potential to adversely [affect] Acronis' relationship with

OpenView Venture Partners and potentially other members of the venture capital and private equity communities, since Mr. Maxwell has relationships with many of the Boston-based investment firms with which we continue to hold dialog[ue]." (Donahue Decl. ¶ 10).

On June 4, 2010, Acronis requested that Lucid8 specifically identify the information that was allegedly misappropriated to permit Acronis' counsel to conduct an investigation of Lucid8's claims, but Lucid8 refused to do so. (Compl. ¶ 20). Donahue subsequently spoke to Werelius by phone on July 2 and 22, 2010 as well as on August 10 and 12, 2010 to discuss the matter, permitting Werelius to question Azeri directly during the August 12, 2010 call, but the parties were unable to resolve the dispute. (Donahue Decl. ¶¶ 11, 12, 14-16; Compl. ¶ 20).

Since May or June 2010, Acronis has now developed an updated version of ARX which it claims it did without using the information provided to it by Lucid8 during the parties' April 15, 2010 meeting or Acronis' inspection of the evaluation copy of DigiScope. (Compl. ¶ 19; Donahue Decl. ¶ 19). Acronis contends that once the product is released to its customers, a lawsuit by Lucid8, even if unfounded, would cause hardship and embarrassment to Acronis and would affect its customer relationships. (Donahue Decl. ¶ 19).

## III. Procedural History

Acronis filed the instant action in Middlesex Superior Court on January 27, 2011, seeking a declaratory judgment that the information provided by Lucid8 was not confidential information protected under the NDA or applicable law and that in any case, Acronis has not misappropriated or otherwise used this information in violation of the NDA or applicable law (Count I). Acronis also asserted claims against Lucid8 for unfair competition and deceptive trade practices in violation of Mass. Gen. L. c. 93A, §§ 2, 11 (Count II) and defamation (Count III). (D. 1). Lucid8 removed

the matter to this Court. (D. 1). Lucid8 has now moved to dismiss pursuant to Rules 12(b)(1) and 12(b)(2), (D. 11), and the Court has heard oral argument on the motion.

## IV.   Discussion

### A.   Lucid8's Motion to Dismiss Based on Lack of Personal Jurisdiction

#### 1.   Standard of Review

On a motion to dismiss for lack of personal jurisdiction, the plaintiff ultimately bears the burden of establishing that personal jurisdiction over the defendant exists. Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591 F.3d 1, 8 (1st Cir. 2009). Where, as here, the defendant claims that the plaintiff has failed to satisfy the prima facie standard to support jurisdiction,[3] the Court considers "'whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction.'" Foster-Miller, Inc. v. Babcock & Wilcox Canada, 46 F.3d 138, 145 (1st Cir. 1995) (quoting Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir. 1992)). Under this standard, the Court "must accept the plaintiff's (properly documented) evidentiary proffers as true for the purpose of determining the adequacy of the prima facie jurisdictional showing." Foster-Miller, 46 F.3d at 145. The Court will also "take specific facts affirmatively alleged by the plaintiff as true (whether or not disputed) and construe them in the light most congenial to the plaintiff's jurisdictional claim." Mass. Sch. of Law at Andover, Inc. v. Am. Bar Ass'n, 142 F.3d 26, 34 (1st Cir. 1998). The facts put forward by the defendant are considered "only to the extent that they are uncontradicted." Adelson v. Hananel, 510 F.3d 43, 48 (1st Cir. 2007)

---

[3]See Def. Memo at 5-8 (arguing that "Lucid8 has insufficient contacts with . . . Massachusetts to establish personal jurisdiction under the prima facie/specific jurisdiction standards" and discussing Newman v. European Aeronautic Defence & Space Co., EADS N.V., 700 F. Supp. 2d 156, 159 (D. Mass. 2010) (applying the prima facie standard)).

(Adelson I).   Notwithstanding the liberality of this approach, the court will not "credit conclusory allegations or draw farfetched inferences."   Ticketmaster-N.Y., Inc., 26 F.3d 201, 203 (1st Cir. 1994).

## 2.    Personal Jurisdiction

"In determining whether a non-resident defendant is subject to its jurisdiction, a federal court exercising diversity jurisdiction 'is the functional equivalent of a state court sitting in the forum state.'"   Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 51 (1st Cir. 2002) (quoting Sawtelle v. Farrell, 70 F.3d 1381, 1387 (1st Cir. 1995) (further citation omitted)). Accordingly, this Court may only exercise personal jurisdiction within the limits set by Massachusetts' long-arm statute and the Constitution.   Lyle Richards Int'l, Ltd. v. Ashworth, Inc., 132 F.3d 111, 112 (1st Cir. 1997).   Because courts are to construe "the Massachusetts long-arm statute as being coextensive with the limits permitted by the Constitution," this Court may "turn directly to the constitutional test for determining specific jurisdiction."   Adelson v. Hananel, 652 F.3d 75, 80 (1st Cir. 2011) (Adelson II).   Although a court may exercise two types of personal jurisdiction:  general and specific, Cossaboon v. Me. Med. Ctr., 600 F.3d 25, 31 (1st Cir. 2010), Acronis does not contend that the Court has general jurisdiction over Lucid8 (Tr. 57:7-12) and, therefore, the Court need only address whether Acronis has sustained its burden of establishing that specific jurisdiction over Lucid8 exists.

### a.    Specific Jurisdiction Analysis

"The First Circuit employs a tripartite analysis to determine whether specific jurisdiction is appropriate:   1) whether the claims arise out of or are related to the defendant's in-state activities; 2) whether the defendant has purposefully availed itself of the laws of the forum state and 3) whether

the exercise of jurisdiction is reasonable under the circumstances." Pesmel N. Am., LLC v. Caraustar Indus., Inc., 754 F. Supp. 2d 168, 172 (D. Mass. 2010) (citing cases).

### i. Relatedness

Relatedness focuses on whether "'the claim underlying the litigation . . . directly arise[s] out of, or relate[s] to, the defendant's forum-state activities.'" Astro-Med, Inc., 591 F.3d at 9 (quoting N. Laminate Sales, Inc. v. Davis, 403 F.3d 14, 25 (1st Cir. 2005) (further citation omitted)). Here, the claims, including a claim for defamation (Count III), raised by Acronis directly arise out of or relate to Lucid8's solicitation and transaction of business with Acronis in Massachusetts. The alleged defamatory email sent by Lucid8 to Massachusetts-based investor and Acronis board member Maxwell was allegedly based on Lucid8's belief that Acronis had engaged in some form of wrongful conduct under the NDA and leading up to, during and after the parties' April 15, 2010 in-person meeting. In addition to the allegedly defamatory email, Lucid8's contacts with Acronis in Massachusetts were instrumental in the formation of the business relationship and the execution of the NDA, both of which are at the heart of Acronis' claims for declaratory judgment (Count I) and violation of c. 93A (Count II). Lucid8 CEO Werelius, initially contacted Maxwell to facilitate discussions with Acronis CEO Donahue. Werelius contacted Azeri, based in Massachusetts, on multiple occasions via email and telephone. Lucid8 maintained regular contact with Acronis employees for the purpose of establishing the parties' business relationship, exchanging drafts of the NDA and entering into the NDA (whereby Acronis was to gain access to Lucid8's confidential information) with Acronis via email. This is sufficient to satisfy relatedness. See, e.g., The Scuderi Group, LLC, v. LGD Tech., LLC, 575 F. Supp. 2d 312, 322 (D. Mass. 2008) (finding relatedness satisfied where the defendant's communications via email and telephone with plaintiff, a

Massachusetts-based company, were instrumental in the formation of the business relationship and execution of the NDA).

### ii.    Purposeful Availment

To show purposeful availment, there must be some act or series of acts "by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." Hanson v. Denckla, 357 U.S. 235, 253 (1958) (citing Int'l Shoe Co v. State of Wash., 326 U.S. 310, 319 (1945)). The purposeful availment test involves a consideration of both voluntariness and foreseeability. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 474-75 (1985). The inquiry under this prong "focuses on the defendant's intentionality" and "is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on these contacts." United States v. Swiss Am. Bank, Ltd., 274 F.3d 610, 623-24 (1st Cir. 2001) (citations omitted). Lucid8 has identified purposeful availment as the critical prong in the Court's personal jurisdiction analysis in this case. (Tr. 43:19-20).

Here, Lucid8 directed regular conduct toward Massachusetts and its contacts with the state were voluntary and the result of more than a single activity or transaction. As noted above, Lucid8 participated in phone calls and exchanged numerous emails with Acronis employees to establish and maintain a business relationship with respect to the email recovery software. In doing so, the parties negotiated the NDA which was eventually executed by both parties. Although Lucid8 refused to agree to a Massachusetts forum selection clause, the parties did agree that the NDA would be governed by Massachusetts law. That is, Lucid8 agreed to apply Massachusetts law for resolving their disputes under the NDA. A choice of law provision selecting the forum's laws "reinforces [a

defendant's] 'deliberate affiliation with the forum State and the reasonable foreseeability of possible litigation there.'" <u>Wolverine Proctor & Schwartz, Inc. v. Aeroglide Corp.</u>, 394 F. Supp. 2d 299, 310 (D. Mass. 2005) (quoting <u>Burger King</u>, 471 U.S. at 482). The fact that Acronis rejected a Massachusetts forum selection clause in the proposed NDA does not alter the analysis. <u>See</u> <u>Scuderi</u>, 575 F. Supp. 2d at 323 (finding purposeful availment where "the parties' inability . . . to agree upon a forum selection clause leaves the court to look at their choice of law provision and observe that the provision points solely to Massachusetts and not to any other state").

In addition, Lucid8 CEO Werelius also sent an allegedly false and defamatory email to Acronis board member and Massachusetts resident, Maxwell, stating that Acronis was not honest in its dealings with Lucid8. In <u>Calder v. Jones</u>, 465 U.S. 783, 788-89 (1984), the Supreme Court set forth the "effects test" in clarifying the jurisdictional requirement for a defamation claim. Under the effects test, a plaintiff must make a "prima facie showing that the defendant's acts (1) were intentional, (2) were uniquely or expressly aimed at the forum state, and (3) caused harm, the brunt of which was suffered - and which the defendant knew was likely to be suffered - [in the forum state]." <u>Broadvoice, Inc. v. TP Innovations LLC</u>, 733 F. Supp. 2d 219, 225 & n. 8 (D. Mass. 2010) (discussing "effects test" derived from <u>Calder</u>). Here, Acronis has made its prima facie showing. Acronis alleges that Werelius, knowing that Maxwell is a prominent venture capitalist investor based in Massachusetts and prominent in venture capital circles here, intentionally made his alleged false and defamatory statements about Acronis in an email to Maxwell and caused reputational harm to Acronis in Massachusetts, the place where the effects of the statement would be felt. Whether Lucid8 disputes that Werelius intended to cause Acronis harm is irrelevant to the Court's jurisdictional inquiry. <u>Noonan v. Winston Co.</u>, 135 F.3d 85, 91 n. 4 (1st Cir. 1998) (noting that for

the purpose of the jurisdictional inquiry, plaintiff must only show that the defendant "intentionally directed an act, tortious or otherwise, toward the forum state. The defendant['s] lack of specific intent to harm [the plaintiff] is irrelevant").[4]

Although it may be true that soliciting business, exchanging emails and telephone calls, negotiating the NDA, agreeing that the NDA would be governed by Massachusetts law and sending an allegedly defamatory email into Massachusetts, each alone may be insufficient contacts to satisfy the minimum contacts standard, as a whole, such contacts with Massachusetts are neither random or fortuitous. Taken together, they indicate that Lucid8 purposefully availed itself of the benefits of doing business in Massachusetts.[5]

Lucid8 relies upon United Elec., Radio & Machine Workers of Am. v. 163 Pleasant Street Corp., 960 F.2d 1080 (1st Cir. 1992) ("Pleasant Street I") to support its argument that Acronis has not demonstrated the requisite minimum contacts standard has been met. (Pl. Memo at 10; Tr. 39:

---

[4]To the extent Lucid8 challenges the merits of the defamation claim, the merits are not before the Court at this time. As Lucid8 itself notes in its amended reply to Acronis' opposition to Lucid8's motion to dismiss, "a plaintiff need not prove the merits of its tort claim" to satisfy jurisdictional requirements. (Def. Am. Reply at 7, n. 4 (citing Noonan, 135 F.3d at 91, n. 4)). Whether Lucid8 may prevail on the merits of this and the other two claims alleged by Acronis will be left for summary judgment or trial, but does not defeat the finding that Lucid8's contacts were sufficiently related to Massachusetts or that purposeful availment is satisfied for the purposes of the Court's jurisdictional analysis.

[5]Lucid8 contends that negotiating a contract such as the NDA here with a Massachusetts company, agreeing to a Massachusetts choice of law provision in the NDA or sending an email into a forum state may be factors in an inquiry regarding jurisdiction, but they are not alone dispositive and cannot support a finding of purposeful availment, citing Saturn Management, LLC v. Gem-Atreus Advisors, LLC, 754 F. Supp. 2d 272, 280 (D. Mass. 2010); NeoDevices, Inc. v. NeoMed, Inc., 2009 WL 689881, *9 (D.N.H. Mar. 12, 2009). However, as discussed above, the Court's conclusion that Lucid8 purposefully availed itself of doing business in Massachusetts is premised on its consideration of Lucid8's contacts as a whole, not merely on one or the other of these factors.

11-20).  In that case, the First Circuit determined the plaintiffs had not demonstrated that the Court had personal jurisdiction over one of the defendants, a Scottish corporation.  Pleasant Street I, 960 F.2d at 1090-91.  The Court limited its analysis to plaintiff's claim that the defendant's principal was involved in negotiating the collective bargaining agreement at issue since plaintiffs' claim centered on the alleged breach of a contractual and statutory duty to pay health-care premiums.  Id. at 1089-90.  In doing so, the Court found the record devoid of any "indication . . . that [defendant's principal's] involvement in the negotiations took place in [Massachusetts] or by means of communication to and from [Massachusetts]" and on this basis, concluded that the claim that defendant's principal was involved in negotiating the agreement, without more, was insufficient to support the district court's exercise of personal jurisdiction over the defendant.  Id. at 1090-91.  On these and other grounds, the First Circuit vacated the district court's preliminary injunction and contempt orders and remanded the case.  Id. at 1099.

Although absent from the parties' filings, this Court notes that after remand, the district court in that case found on a more fulsome record that the constitutionally required minimum contacts were still not present and granted defendant's motion to dismiss.  United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant Street Corp., 987 F.3d 39, 42 (1st Cir. 1993) ("Pleasant Street II").  On appeal, the First Circuit disagreed and found that the record now established that purposeful availment was satisfied, pointing to new allegations and the record showing that the defendant's principal was acting on behalf of the defendant, that the negotiations took place in Massachusetts and that while in Massachusetts, the defendant's principal participated in phone calls with individuals in Scotland related to the negotiations.  Pleasant Street II, 987 F.3d at 44-45.  Here, the contacts with Massachusetts are similar to those found sufficient to constitute purposeful availment

in <u>Pleasant Street II</u>.  Here, not only did Lucid8 negotiate the NDA with Massachusetts-based Acronis and maintain regular contact by phone and e-mail with its employees, but, as discussed more fully above, the record also shows that Lucid8 solicited business here and its CEO sent an allegedly defamatory email to a Massachusetts resident.

Lucid8 further contends that it did not purposefully avail itself of Massachusetts because "Lucid8 never solicited Acronis, in Massachusetts . . . until the process was commenced by Acronis,"  (Def. Am. Reply at 6); that is, "it was Acronis who started it all by [Acronis employee Bobroviskikh] downloading DigiScope" off Lucid8's website, "alert[ing] employees of Lucid8 to ask what was going on." (Def. Am. Reply 1-2).  However, it matters less that Acronis downloaded a DigiScope copy and more that Lucid8, for its benefit, made that download available on its website to solicit clients, like Acronis and, using the information provided by an Acronis employee when he made the download, contacted Acronis about its planned use of the DigiScope download.  Because Lucid8 "use[d] its website to solicit clients in Massachusetts and elsewhere, and to encourage potential clients, including those located in the Commonwealth, to contact [it] using its website . . . [Lucid8] expressed a desire to do business in Massachusetts through use of [its] interactive website."  <u>Edvisors Network, Inc. v. Educ. Advisors, Inc.</u>, 755 F. Supp. 2d 272, 282 (D. Mass. 2010).  From that point onward, Lucid8 sought, and did establish, a business relationship with Acronis.  As Lucid8 itself explained in its amended reply, after Acronis responded to Lucid8's inquiry after the downloading of DigiScope that it was interested in a third-party engine for granular recovery software, "Lucid8, being in business and doing what businesses do, responded by contacting Scott Maxwell, a director of Acronis, to facilitate further discussion with the principals . . . It would have been strange, indeed, if Lucid8 said 'no, not interested.'" (Def. Am. Reply at 2).

It is reasonable that a company who inquires about and pursues a business relationship with a Massachusetts company, whose primary economic impact is here, and engages in the subsequent course of conduct that Lucid8 did here with Acronis, would be subject to the jurisdiction of a court in Massachusetts when it is sued for a declaratory judgment and violations of Massachusetts law arising out of the parties' business relationship. Accordingly, Lucid8's contacts, when considered as a whole, constitute purposeful availment.

### iii.    Reasonableness

Even if relatedness and purposeful availment have been shown, the Court must still determine whether the exercise of personal jurisdiction is reasonable in light of the so-called "gestalt" factors: "(1) [Lucid8's] burden of appearing, (2) [Massachusetts'] interest in adjudicating the dispute, (3) [Acronis'] interest in obtaining convenient and effective relief, (4) the judicial system's interest in obtaining the most effective resolution of the controversy, and (5) the common interests of all sovereigns in promoting substantive social policies." Adelson II, 652 F.3d at 83 (citation omitted); see Burger King, 471 U.S. at 477. In considering and weighing these factors, the Court's exercise of personal jurisdiction over Lucid8 is reasonable.

The first factor does not weigh against jurisdiction. Here, Lucid8 will be required to litigate this case in a Massachusetts court despite the fact that it and its  witnesses are located in Washington. Although the need to defend an action in a foreign jurisdiction "is almost always inconvenient and/or costly . . . this factor is only meaningful where a party can demonstrate some kind of special or unusual burden." Pritzker v. Yari, 42 F.3d 53, 64 (1st Cir. 1994). Lucid8 failed to address the gestalt factors and has therefore not demonstrated a "special or unusual burden" about its situation other than the ordinary inconvenience of litigating an action in another state. See

<u>Adelson II</u>, 652 F.3d at 83 (concluding that the first factor did not weigh against jurisdiction because defendant had not shown a special or unusual burden in defending an action in Massachusetts "over and above that of doing so in any foreign jurisdiction").

The second factor, concerning Massachusetts' interest in adjudicating the dispute, weighs heavily in favor of keeping the lawsuit in this district. Acronis is based here in Massachusetts. Its headquarters are located in Woburn. At a minimum, it presumably has been harmed from the alleged defamatory email directed to Massachusetts and Massachusetts has an interest in seeing this harm addressed and remedied here. In addition, Massachusetts has an interest in enforcing its laws, since under the NDA, the parties agreed that Massachusetts law would govern their disputes.

The third gestalt factor, which relates to convenience of the venue to the plaintiff, also plainly weighs in Acronis' favor. The First Circuit has "repeatedly observed that a plaintiff's choice of forum must be accorded a degree of deference with respect to the issue of its own convenience." <u>Sawtelle</u>, 70 F.3d at 1395 (citing cases). Here, clearly, it would be more convenient for Acronis to pursue this action in Massachusetts where its corporate headquarters and its witnesses and documents are located.

The judicial system's interest in the most effective resolution of the controversy "does not appear to cut in either direction." <u>Ticketmaster</u>, 26 F.3d at 211. However, because "it is unlikely that the parties will be able to resolve the dispute without judicial intervention in some forum" if the matter is dismissed here, "[t]he most efficient path for the judicial system . . . is to move forward with the lawsuit in the present forum." <u>Hasbro, Inc. v. Clue Computing, Inc.</u>, 994 F. Supp. 34, 46 (D. Mass. 1997).

The final factor – concerning the interests of each of the affected states (here, Massachusetts

and Washington) – in promoting substantive social policies favors Massachusetts.  Massachusetts

has an interest in applying Massachusetts law that governs the NDA which would be applied in

determining any alleged violation of the NDA and resolving any allegations of misappropriation

made against its residents.   Likewise, Massachusetts has a strong interest in redressing harms

inflicted by an out-of-state defendant for the unfair and deceptive practices alleged here in violation

of c. 93A and  based on the dissemination of a false and defamatory statement made about Acronis.

Upon consideration and weighing of all these factors, the exercise of personal jurisdiction over

Lucid8 is reasonable.

Accordingly, Lucid8's motion to dismiss for lack of personal jurisdiction is denied.

### B.      Ripeness

#### 1.      Standard of Review

An action for declaratory judgment "enable[s] litigants to clarify legal rights and obligations

before acting upon them."  Ernst & Young v. Depositors Econ. Prot. Corp., 45 F.3d 530, 534 (1st

Cir. 1995).  Under the Declaratory Judgment Act, 28 U.S.C. § 2201, an action seeking declaratory

relief must present a case of actual controversy.  Ernst & Young, 45 F.3d at 534.  A "[r]equest[] for

a declaratory judgment may not be granted unless [it] arise[s] in a context of a controversy 'ripe'

for judicial resolution."  Verizon New England, Inc. v. Int'l Bhd. of Elec. Workers, 651 F.3d 176,

188 (1st Cir. 2011) (citation omitted).  "Ripeness is an Article III jurisdictional requirement."  Id.

 The ripeness doctrine "prevents the court, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements."  Abbott Laboratories v. Gardner, 387 U.S. 136,

148 (1995).  "The party seeking a declaratory judgment bears the burden of establishing that the

district court has jurisdiction."  Tocci Bldg. Corp. of N.J., Inc. v. Va. Sur. Co., 750 F. Supp. 2d 316,

320 (D. Mass. 2010) (citing <u>Cardinal Chem. Co. v. Morton Int'l, Inc.</u>, 508 U.S. 83, 95 (1993)).

For a claim to be ripe in the declaratory judgment context, the plaintiff must satisfy a two-prong test: fitness for review and hardship. <u>Ernst & Young</u>, 45 F.3d at 535. First, the court must determine whether the issue presented is fit for judicial review - an inquiry that "typically involves subsidiary queries concerning finality, definiteness, and the extent to which resolution of the challenge depends on facts that may not yet be sufficiently developed." <u>Ernst & Young</u>, 45 F.3d at 535. "[T]he critical question . . . is whether the claim involves uncertain and contingent events that may not occur as anticipated or may not occur at all." <u>Id.</u> at 536 (citation omitted). In assessing fitness, "[t]he linchpin . . . is adverseness," which must be determined in a "practical, commonsense way." <u>State of R.I. v. Narragansett Indian Tribe</u>, 19 F.3d 685, 692, 693 (1st Cir. 1994). "[T]he facts alleged, under all the circumstances, [must] show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." <u>Id.</u> at 693 (quoting <u>Maryland Casualty Co. v. Pacific Coal & Oil Co.</u>, 312 U.S. 270, 273 (1941) (further citation omitted)).

Second, the Court considers "the extent to which withholding judgment will impose hardship - an inquiry that typically 'turns upon whether the challenged action creates a 'direct and immediate' dilemma for the parties.'" <u>Stern v. U.S. Dist. Court</u>, 214 F.3d 4, 10 (1st Cir. 2000) (quoting <u>W.R. Grace & Co. v. EPA</u>, 959 F.2d 360, 364 (1st Cir. 1992) (further citation omitted)). In determining hardship, the First Circuit has explained that the key question is "'whether granting relief would serve a useful purpose, or, put another way, whether the sought-after declaration would be of practical assistance in setting the underlying controversy to rest.'" <u>Verizon</u>, 651 F.3d at 188 (quoting <u>State of R.I.</u>, 19 F.3d at 693). "[T]he greater the hardship, the more apt a court will be to

find ripeness." <u>Ernst & Young</u>, 45 F.3d at 536. Both the fitness and hardship prong must be satisfied, "although a very strong showing on one axis may compensate for a relatively weak showing on the other." <u>Stern</u>, 214 F.3d at 10.

### a. Fitness

Based on the circumstances present here, this case is fit for review. Acronis has not requested a declaratory relief in a "speculative situation[ ]." <u>State of R.I.</u>, 19 F.3d at 693. Lucid8's actions demonstrate that there presently exists a substantial controversy between the parties. First, Lucid8's counsel's May 5, 2010 letter to Donahue accused Acronis of misappropriation, stating that "Acronis has been and intends to continue to misappropriate Lucid8's Confidential Information for its own use, in clear violation of the NDA and applicable law." (Pl. Opp., Ex. 8). The letter demanded that Acronis provide a sworn certification by a certain deadline and threatened Acronis that "litigation regarding these matters is inevitable" if Acronis did not meet Lucid8's demands. (Pl Opp., Ex. 8). Second, Werelius' May 28, 2010 email to Maxwell, stating that Acronis was "not honest" and that the company had turned "the issue over to [its] legal team" (Donahue Decl., Ex. A), supports Acronis' belief that Lucid8 is prepared to pursue legal action against Acronis for misappropriation or breach of the NDA as soon as Acronis releases its new product. The parties' conversations after the Werelius' May 28, 2010 email only bolsters the conclusion that a substantial controversy exists between the parties. According to Donahue's declaration, Werelius told Donahue that he interpreted Acronis' response to Lucid8's demand letter as a tacit admission of wrongdoing by Acronis, that Acronis representatives had misled Lucid8 to gain access to Lucid8's trade secrets and that Lucid8 would conclude that Acronis had misappropriated Lucid8's alleged confidential information if Acronis' new product was able to perform granular recovery of calendar items with

consistency. (Donahue Decl. ¶¶ 12, 15). Although Werelius now states in his affidavit that "Lucid8 has no way of validating whether Acronis has breached the NDA" and that "[w]hile a dispute over 'infringement' or breach of the NDA may arise once the Acronis product is released, there is no actual dispute at this time," Werelius Aff. ¶ 12, Werelius also states that had Lucid8 "known the real intentions of Acronis [it] would not have met or shared [its] confidential information at the meeting," Werelius Aff. ¶ 10, and he expressly reserved the right to assert counterclaims in this action for unfair business practices, deceit and misrepresentation. (Werelius Aff. ¶ 12 n. 1). Moreover, in its amended reply, Lucid8 challenged Acronis' "denial of any possible liability." Def. Am. Reply at 3. Thus, Lucid8's actions and allegations of wrongdoing against Acronis related to the alleged misappropriation of Lucid8's confidential information to date shows a substantial controversy exists between the parties. That Lucid8 has yet to actually bring a lawsuit against Acronis does not alter the Court's conclusion. "Once the gun has been cocked and aimed and the finger is on the trigger, it is not necessary to wait until the bullet strikes to invoke the Declaratory Judgment Act." ANR Pipeline Co. v. Corp. Comm'n of Okla., 860 F.2d 1571, 1578 (10th Cir. 1988) (cited in Stern, 214 F.3d at 11). "If the injury is certainly impending that is enough." State of R.I., 19 F.3d at 693 (quoting Pacific Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n, 461 U.S. 190, 201 (1983) (further citation omitted)). Such is the case here. Accordingly, Acronis' claim for declaratory judgment is fit for review by the Court.

### b.      Hardship

In addition to being fit for review, Acronis' declaratory judgment claim would be of significant "assistance in setting the underlying controversy to rest," Verizon, 651 F.3d at 188 (quoting State of R.I., 19 F.3d at 693) (internal quotation marks omitted), and therefore, satisfies the

hardship prong. For the reasons discussed above, resolving Acronis' claim will assist in resolving the parties' dispute concerning the alleged misappropriation of Lucid8's confidential information. Lucid8 has failed to identify any hardship that would occur if Acronis' requested relief is not granted. By contrast, Acronis contends that, in light of Lucid8's allegations against Acronis to date, when Acronis releases its new software product, Lucid8 will likely file suit consistent with those allegations and seek to prevent Acronis from fully launching its product. (Donahue Decl. ¶ 19; Tr. 68: 9-22). Acronis claims that such action would cause hardship and embarrassment to the company, would harm its relationships with its customers and significantly delay the launch of its product. (Donahue Decl. ¶ 19; Tr. 68: 9-22). Acronis has therefore satisfied the hardship prong.

Because Acronis has satisfied the fitness and hardship prongs of the ripeness test, the Court has subject matter jurisdiction over this case. Accordingly, Lucid8's motion to dismiss Acronis' claim for a declaratory judgment under Rule 12(b)(1) is denied.

## V.    Conclusion

For the foregoing reasons, Lucid8's motion to dismiss the complaint under Rules 12(b)(1) and (b)(2) is DENIED.

**So ordered.**

/s/ Denise J. Casper
United States District Judge